UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PNC EQUIPMENT FINANCE, LLC,

    Plaintiff,

vs.

MARK MARIANI, *et al.*,

    Defendants.

Civil Action No. 1:14-cv-663

Dlott, J.
Bowman, M.J

## REPORT AND RECOMMENDATION

This is a diversity action in which Plaintiff's complaint asserts claims for breach of contract against Defendants Harry Carr and Mark Mariani. This matter is before the Court on Plaintiff's motion for summary judgment (Doc. 39) and the parties' responsive memoranda. (Docs. 40, 45, 46, 47, 48, 49).

**I.    Background and Facts**

Defendant Harry S. Carr ("Mr. Carr"), is a licensed attorney, whose employment history includes: stints in the Washington D.C. offices of two law firms; vice president positions in two business units of AT&T; president of a business unit in Lucent; and president, chief operating officer, or chief executive officer of at least four (4) smaller companies which include Yurie Systems, Tellium Incorporated, Simpler Networks, and his present employer Bay Microsystems. (Doc. 40, Ex. 2 Undisputed Facts, at ¶¶ 3-5). Mr. Carr has also founded, or possessed interests in a number of businesses. (*Id.* at ¶ 6). Defendant Mark Mariani ("Mr. Mariani") owns several businesses, and among other business ventures, Mr. Mariani is a residential and commercial real estate developer. (Id at ¶¶ 7-9). Mr. Mariani and Mr. Carr were introduced by a mutual friend, Alan Cook. (*Id.*

at ¶ 10). At the time of the introduction, Mr. Mariani understood that both he and Mr. Carr were interested in buying an aircraft. (*Id.* at ¶ 11).

In August of 2003, Mr. Carr and Mr. Mariani formed HM, LLC for purposes of purchasing aircraft. (*Id.* at ¶¶ 12-13). Mr. Carr and Mr. Mariani each obtained a 50% interest in HM, and both had actual authority to bind HM to contracts. (Doc. 40, Ex. 2 at ¶ 16). From 2003-2008, HM purchased five (5) airplanes and a helicopter. (*Id.* at ¶ 17). HM financed each of these aircraft purchases. (*Id.* at ¶ 19).

Plaintiff PNC Equipment Finance, LLC ("PNCEF") is a limited liability company organized and existing under the laws of the State of Delaware, and maintains a place of business in the State of Ohio. (Doc. 40, Ex. 3 Aff. D. Chambers at ¶ 4). PNCEF is the successor by merger to PNCEF, LLC f/k/a National City Commercial Capital, LLC, successor by merger to National City Capital Corporation.

On or about December 13, 2005, PNCEF, as Lender, and HM, as borrower, entered into a Master Aircraft Mortgage and Security Agreement ("Master Mortgage") as modified, amended, or supplemented from time to time. (Doc. 40, Ex. 2 at ¶¶ 14, 16, 19-20). Through a series of loans issued by PNCEF to HM and evidenced by, *inter alia*, promissory notes, and related documents, and secured by the Master Mortgage (collectively, "Loan Documents"), HM purchased the following two (2) aircraft and related engines—(1) a Dassault-Breguet model Mystere Falcon 900 (also described in the FAA records as model Falcon 900B) aircraft bearing manufacturer's serial number 113 (identified on the International Registry drop down menu as DASSAULT AVIATION model Falcon 900 with serial number 113) (the "SN113 Aircraft") and (2) a Dassault Aviation model Falcon 2000 aircraft bearing manufacturer's serial number 51 (described

2

on the International Registry drop down menu as DASSAULT AVIATION model Falcon 2000 with serial number 51) and United States Registration No. N797CM together with two (2) General Electric model CFE 738-1-1B aircraft engines bearing manufacturer's serial numbers P105218 and P105219 (not described on the International Registry drop down menu, but described in free text registrations as GE model CFE 738-1-1B with serial numbers P105218 and P105219) (the "SN51 Aircraft"). (*Id.* at ¶¶ 21-27).

In order to induce PNCEF to enter the Master Mortgage and extend financing to HM to facilitate the acquisition of the aircraft, Mr. Carr and Mr. Mariani (collectively, "the Guarantors") executed separate personal guaranties in favor of PNCEF. Under the guaranties, Mr. Carr and Mr. Mariani unconditionally, jointly, and severally promised to perform all of the obligations owed by HM to PNCEF, including expressly all payment obligations under the Loan Documents. (Doc. 40, Ex. 2 at ¶¶ 28 & 30).

On January 15, 2010, the loans matured, at which time all amounts outstanding under the Loan Documents became immediately due and owing to PNCEF. The balance due at maturity was $40,900,000. (Doc. 40, Ex. 3, Aff. of D. Chambers at ¶ 10). HM and the Guarantors failed to remit payment in full to PNCEF. (Doc. 40, Ex. 4, Carr Dep. at p. 50/5-7).

By letter dated February 9, 2010 (the "Notice of Default"), PNCEF notified HM and the Guarantors of the default under the Loan Documents, made immediate demand for payment of the amounts outstanding under the Loan Documents, and imposed the Post-Default Rate of Interest. (*Id.* at pp. 51/23-52/2; Doc. 40, Ex. 5; Mariani Dep. at p. 53/10-14). By letter dated August 20, 2010 (the "Surrender Demand"), PNCEF again notified HM and the Guarantors of their default under the Loan Documents and made

immediate demand for, among other things, the voluntary surrender of the Aircraft. (Doc. 40, Ex. 4, Carr Dep. at p. 53/17- 25).

On February 9, 2010 and again on August 20, 2010, PNCEF sent default notices to HM and the Guarantors. (Doc. 40, Ex. 2 at ¶¶ 33- 34).

On or about September 9, 2010, HM sold the SN51 Aircraft and remitted $8,000,000.00 from the sale proceeds to PNCEF on account of the SN51 Loan. (Doc. 40, Ex. 2 at ¶ 35).

On November 19, 2010, PNCEF, HM, and the Guarantors entered into the Aircraft Transfer and Settlement Opportunity Agreement ("ATSOA") pursuant to which HM and Guarantors were given the opportunity to pay off the balance due at a discounted rate. ("Discounted Payoff Opportunity"). (*Id.* at ¶ 39).

Thereafter, HM and the Guarantors surrendered the SN113 Aircraft to PNCEF, which PNCEF sold (Doc. 40, Ex. 4, Carr Dep. at p. 78/6-13). PNCEF received $8,290,625.00 from the proceeds of the sale and applied it to the outstanding amounts due to PNCEF under the SN113 Loan. (Doc. 40, Ex. 3, Aff. D. Chambers at ¶ 16).

HM and the Guarantors, however, failed to remit funds sufficient to satisfy the remaining balance of the Discounted Payoff Opportunity.

In exchange for the payment of $250,000.00, HM, the Guarantors, and PNCEF then entered into a Forbearance Agreement (the "Forbearance Agreement") dated April 6, 2011 pursuant to which HM and the Guarantors: (i) ratified and confirmed all of their obligations owing to PNCEF; (ii) stipulated to the validity and enforceability of the Loan Documents; (iii) agreed that PNCEF fully performed its obligations under the Loan Documents; (iv) released PNCEF of any and all debts, claims, demands, liabilities or

4

causes of actions of every kind related to the Loan Documents; and (v) covenanted to pay monthly interest payments at Prime plus 4% with an opportunity to fully and finally discharge all obligations owed by HM and the Guarantors to PNCEF with the sale proceeds from the SN113 Aircraft plus a payment of $2,250,000.00 on or before September 30, 2011 or a payment of $2,500,000.00 on or before December 31, 2011 (the "Second Discounted Payoff Opportunity"). (Doc. 40, Exs. 4,5, Carr Tr. at pp. 86/1-88/24; Ex. Mariani Tr. at pp. 97/14-98/4).

HM and the Guarantors failed to remit funds sufficient to satisfy the Second Discounted Payoff Opportunity.

Thereafter, in exchange for the payment of $1,000,000.00, HM, Guarantors, and PNCEF entered into an Amended Forbearance Agreement dated September 30, 2011 (the "Amended Forbearance Agreement") pursuant to which HM and the Guarantors: (i) ratified and confirmed all of their obligations owing to PNCEF; (ii) stipulated to the validity and enforceability of the Loan Documents; (iii) agreed that PNCEF fully performed its obligations under the Loan Documents; (iv) released PNCEF of any and all debts, claims, demands, liabilities or causes of actions of every kind related to the Loan Documents; and (v) covenanted to pay monthly interest payments at Prime plus 4% with an opportunity to fully and finally discharge all obligations owed by HM and Guarantors to with a payment of $1,500,000.00 on or before December 31, 2012 (the "Third Discounted Payoff Opportunity"). (Doc. 40, Exs. 4, 5, Carr Tr. at p. 102/1-15; Ex. 14; Mariani Tr. at pp. 99/16-100/3)

HM and the Guarantors failed to remit funds sufficient to satisfy the Third Discounted Payoff Opportunity.

5

HM, the Guarantors, and PNCEF then entered into a Second Amended Forbearance Agreement dated April 5, 2013 (the "Second Amended Forbearance Agreement") pursuant to which HM and the Guarantors: (i) ratified and confirmed all of their obligations owing to PNCEF; (ii) stipulated to the validity and enforceability of the Loan Documents; (iii) released PNCEF of any and all debts, claims, demands, liabilities or causes of actions of every nature related to the Loan Documents; and (v) covenanted to pay monthly interest payments at Prime plus 4% with an opportunity to fully and finally discharge all obligations owed by HM and the Guarantors to PNCEF with a payment of $1,500,000.00 if paid on or before June 30, 2013, or $1,550,000.00 if paid on or before September 30, 2013, or $1,650,000.00 if paid on or before December 31, 2013 (the "Fourth Discounted Payoff Opportunity"). (Doc. 40, Exs. 4, 5, Carr Tr. at pp. 106/15-107/17; Ex. 15; Mariani Tr. at pp. 100/24-102/5).

HM and the Guarantors failed to remit funds sufficient to satisfy the Fourth Discounted Payoff Opportunity.

By letter dated January 3, 2014 ("Demand Letter"), PNCEF notified HM and the Guarantors that the Forbearance Period had expired and made demand for the immediate payment of all indebtedness due and owing under the Loan Documents. (Doc. 40, Ex. 3, Aff. D. Chambers at ¶ 24;Doc. 40, Exs. 4, 5, Carr Tr. at p. 111/1-17; Ex. 16; Mariani Tr. at p. 102/6-10).

Mr. Mariani understood that the payment obligations under the Discounted Payoff Opportunities were his as a guarantor, and the failure to pay the Discounted Payoff Opportunities at maturity permitted PNCEF the right to enforce the full obligation. (Doc. 40, Ex. 5, Mariani Tr. at pp. 101/23-102/5; 103/2-12). In negotiating for the

6

Discounted Payment Opportunities, Mr. Carr proposed the idea that he and Mr. Mariani, as the Gurantors of HM, would be obligated for the full amount of the indebtedness, if HM failed to comply with the payment terms. (Doc. 40, Ex. 4, Carr Tr. at pp. 61/17-62/6; Ex. 7). Both Mr. Carr and Mr. Mariani acknowledged that the indebtedness to PNCEF has not been paid. (Carr Tr. at p. 111/11-17; Mariani Tr. at p. 102/2-5). The indebtedness allegedly owed and not paid to PNCEF as a result of the Loan Documents is $26,421,527.93. (Doc. 40, Ex. 3, Aff. of D. Chambers at ¶ 26).

Plaintiff initiated this action in August 2014. (Doc. 1). Plaintiff now moves for summary judgment in its favor and against Harry Carr and Mark Mariani and to award or assess PNCEF the sum of $26,421,527.93 against Harry Carr and Mark Mariani, jointly and severally.

**II. Plaintiff's motion for summary judgment is well taken**

*A. Standard of Review*

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251–52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, inferences are not to be drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587 (citation omitted).

### B. *Plaintiff's motion for summary judgment*

Plaintiff contends that PNCEF entered into a series of loans with HM that were guaranteed by Defendants Carr and Mariani. HM defaulted on the obligation and Guarantors have never made the loss whole. PNCEF, therefore, contends that it is entitled to summary judgment as a matter of law. Defendants, however, contend that unless PNCEF met every obligation – both explicit and implied - under the loan agreement its claim for breach of contract must fail. As such, Defendant Mariani contends that issues of fact remain as to whether PNC met its obligations of good faith and fair dealing under the forbearance agreements. Defendant Carr filed a *pro se* memorandum in oppostion in which he argues that PNCEF fails to cite competent evidence in support of its motion for summary judgment. Defendant Carr further argues that PNCEF failed to perform its obligations under the loan documents and violated the implied covenant of good faith and fair dealing. Upon careful review and for the reasons that follow the undersigned finds that no genuine issues of fact remain and Plaintiff is entitled to judgment as a matter of law.

### C. *Applicable Law and Analysis*

"Under Ohio law, the elements for a breach of contract claim are the existence of a valid contract between the parties, performance by the plaintiff, a breach by the defendant, and resulting damages*." Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 906 (S.D. Ohio 2013) (citing *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006)).

Moreover, a guaranty is a contract, and courts defer to the plain language of a contract if the language is clear and unambiguous. *Medical Billing, Inc. v. Medical*

*Mgmt. Sciences, Inc.*, 212 F.3d 332, 336 (6th Cir. 2000). "Guaranty agreements are construed similarly to any other contract, and therefore the court need not look beyond the plain language of the agreement." *Huntington Nat'l Bank v. Wallace*, Case No. 3:09CV408, 2009 U.S. Dist. LEXIS 81034, at *15 (N.D. Ohio August 19, 2009); see also *New Mkt. Acquisitions, Ltd. v. Powerhouse Gym*, 154 F. Supp. 2d 1213, 1221 (S.D. Ohio 2001) ("The express terms of [a] guaranty are controlling….").

Here, Plaintiff argues that there is no dispute as to PNCEF's performance under the Loan Documents and Forbearance agreement; and no dispute as to the Defendants default under the Loan Documents and Forbearance agreements.  As detailed above, the parties negotiated and consummated several Loan Documents and Forbearance Agreements.  The integrated Forbearance Agreements, permitted PNCEF upon a "Forbearance Termination Event," which included a failure to satisfy the Discounted Payoff Opportunity, to "exercise all of its rights and remedies under this Agreement, the Loan Documents and applicable law, including, without limitation, to maintain a claim against Borrower and Guarantors to the extent of any deficiency in the Aggregate Claim Amount[.]" (Doc. 1, Exs. L, N, O, P).  As such, Plaintiff argues that they are entitled to judgment as a matter of law for breach of contract.

Defendants, however, contend that PNCEF has not established that there are no issues of fact as to whether PNCEF met its obligations under the Loan and Forbearance Agreements; namely, the implied duty of good faith and fair dealing.  It is well-established that every contract has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract. *Littlejohn v. Parrish,* 163 Ohio App.3d 456, 2005-Ohio-4850, 839 N.E.2d 49, ¶

21 (1st Dist.). "'Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Id.* at ¶ 26, quoting Restatement of the Law 2d, Contracts, Section 205, Comment a (1981). Bad faith may consist of inaction, or may be the "'abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance.'" *Id.,* quoting Restatement of the Law 2d, Contracts, Section 205, Comment d (1981). "'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could have not been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank,* 75 Ohio St.3d 433, 443–44, 662 N.E.2d 1074 (1996), quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1357 (7th Cir.1990).

In this regard, the record indicates that in November 2010, after failing into default on the Loan Agreement, the parties entered into a settlement agreement in which HM would surrender an aircraft and pay $2.5 million by December 31, 2010 in full settlement of all claims. (Doc. 1, Ex. L). However, Defendants were unable to make the December payment. PNCEF did not take steps to enforce the terms of the loan, but instead entered into further repayment negotiations.

As a result of the negotiations, the parties entered into a forbearance agreement in April 2011. Under the agreement, the parties had until September 2011 to pay the remaining $2.25 million. Defendants could not make the September payment and forbearance was granted. This pattern continued until 2014. As noted by Defendant Mariani, for a period of 33 months following the 2010 default notice, PNCEF and

11

Defendants followed the same practice: A date to make the settlement payment would be set; funds in the total amount of the settlement were unavailable; the parties would negotiate an extension, and a new forbearance period would be established (often after partial payment of the settlement amount). In light of these facts, Defendants contend that the parties established a pattern and practice that Defendants came to rely on and expect. As such, Defendant asserts a jury could find that PNCEF's sudden departure from this pattern was done in bad faith.

In response to these assertions, Plaintiff cites *Wendy's International, Inc. v. Saverin*, 337 Fed. Appx. 471, 476 (6th Cir. 2009), wherein Wendy's filed a breach of contract claim against a personal guarantor of a Wendy's franchisee after the franchisee defaulted under the franchise agreement, a reinstatement agreement, and a forbearance agreement. The guarantor argued that Wendy's did not forbear long enough for the franchisee to find buyers for the franchisee. The District Court granted summary judgment in favor of Wendy's and the guarantor appealed. The Sixth Circuit affirmed the District Court's grant of summary judgment holding that "Wendy's did what it was expressly allowed to do under the applicable agreements. Wendy's was under no obligation to forbear for any particular amount of time, given that [the franchisee] had breached the Forbearance Agreement by defaulting on the latter's payment obligations." *Id.* at 476. As such, PNCEF argues it did not breach the implied duty of good faith by acting as allowed by the specific terms of the contact.

Termination of the forbearance agreement in *Wendy's Int'l* was based on an intervening event specifically identified in the contract (the appointment of a receiver); as well as the failure to pay an amount due by a date specified in the forbearance

agreement. Although here, unlike in *Wendy's Int'l,* for a period of 33 months following the 2010 default notice, PNCEF and Defendants followed the same practice: A date to make the settlement payment would be set; funds in the total amount of the settlement were unavailable; the parties would negotiate an extension, and a new forbearance period would be established. In light of these facts, Defendants contend that the parties established a pattern and practice that Defendants came to rely on and expect. However, the forbearance agreement, as it was extended and modified, did not require that further negotiation occur after each default by Defendants. There must come a time when a lender can say enough is enough. For Plaintiff that time came on January 3, 2014, when Plaintiff sent a demand letter notifying Defendants that they failed to make the required payment on time and immediately demanded payment of all monies due and owing.

The cases cited by Defendant Mariani, *PHH Mortgage v. Ramsey*, 17 N.E 3d 629 (Ohio App. 10th District 2014) and *DiPasquale v. Costas*, 186 Ohio App.3d 121 (Ohio Ct. App. 2nd Dist. 2010), are factually distinguishable. *PHH Mortgage* dealt with a debtor making payments electronically for six years and a computer error on the lender's end that caused an alleged delinquency to occur even though Plaintiff tried to make the payment. *DiPasquale* involves parties who acted without a formal agreement, and then once an agreement was signed, all parties acted contrary to the terms of the agreement.

Here, Plaintiff did not take an opportunist advantage in a way that could not have been contemplated by the parties. Everyone contemplated that payments would be made on time. In fact, the forbearance agreement is very clear as to what was due and

when. The implied duty of good faith and fair dealing does not mean that a party is not entitled to enforce a contract or that it must put the other party's interests above its own. *See Wells Fargo Bank, N.A. v. Daniels*, 2011-Ohio-6555, ¶¶ 15-16; citing *Ed Schory & Sons, Inc. v. Francis,* 75 Ohio St.3d 433, 443–444, 1996–Ohio–194, 662 N.E.2d 1074. "Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of good faith." *Id.* at 443, 662 N.E.2d 1074, quoting *Kham & Nates Shoes No. 2, Inc. v. First Bank of Whiting (C .A.7,* 1990), 908 F.2d 1351, 1357–1358.

The parties in this case are sophisticated businessmen. They signed a contract that expressly stated that they would make payments when due. They cannot now escape the terms of that contract by claiming a lack of good faith because, at least for a while, PNCEF was willing to renegogiate. See *Wells Fargo,* 2011-Ohio-6555 at ¶¶ 15-16. *See also Myers v. Evergreen Land Dev., Ltd.,* 7th Dist. No. 07 MA 123, 2008–Ohio–1062, ¶ 27–28.

Thus, the court finds there is no question of fact and Plaintiff's motion for summary judgment is well-taken and should be granted.

### III. Conclusion

In light of the foregoing, Plaintiff's motion for summary judgment (Doc.39) should be **GRANTED.**

**IT IS SO ORDERED.**

                                  *s/Stephanie* K. Bowman
                                  Stephanie K. Bowman
                                  United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PNC EQUIPMENT FINANCE, LLC,

    Plaintiff,

vs.

MARK MARIANI, *et al.*,

    Defendants.

Civil Action No. 1:14-cv-663

Dlott, J.
Bowman, M.J

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).